UNITED STATES DISTRICT COURT　　　　　　　　ELECTRONIC PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
UNITED STATES OF AMERICA,

　　　　　　　　　　　　　　　　　　　　　　　　　　MEMORANDUM
　　　　　　- against -　　　　　　　　　　　　　　　AND ORDER

MANUEL NOGUEIRA, ANGEL AYBAR,　　　　　　　　08-CR-876 (JG)
JEFFREY CIMAN and ROBERT RICART,

　　　　　　　　　　　*Defendants*.
----------------------------------------------------------------- X

A P P E A R A N C E S:

 BENTON J. CAMPBELL
  United States Attorney
  Eastern District of New York
  271 Cadman Plaza East
  Brooklyn, New York 11201
By: Justin David Lerer
  Walter M. Norkin
  *Attorneys for the United States*
  *of America*

 RICHARD H. ROSENBERG
  217 Broadway
  Suite 707
  New York, New York 10007
  *Attorney for Defendant Manuel Nogueira*

 SULLIVAN & BRILL LLP
  115 Broadway
  17th Floor
  New York, New York 10006
By: Steven Gary Brill
  *Attorneys for Defendant Angel Aybar*

 FEDERAL DEFENDERS OF NEW YORK
  16 Court Street
  Brooklyn, New York 11201
By: Michelle A. Gelernt
  *Attorneys for Defendant Jeffrey Ciman*

 KENNETH A. PAUL
  111 Broadway
  Suite 701

New York, New York 10006
*Attorney for Defendant Robert Ricart*

JOHN GLEESON, United States District Judge:

On September 1, 2009, the government submitted a motion in limine requesting that Detective Jose Vargas of the New York City Police Department be permitted to testify to questions he asked the defendants regarding their telephone numbers during their arrest processing on November 20, 2008. On September 3, 2009, defendant Manuel Nogueira filed an opposition to the government's application and requested that his statement of his telephone number be suppressed. At the final pretrial conference on September 9, 2009, the government indicated that the other three defendants had provided a telephone number in response to Detective Vargas's questioning, but Nogueira had not. As a result, I deemed the motion moot as to Nogueira. At the conference, the other three defendants were permitted to adopt Nogueira's opposition to the motion in limine and to supplement Nogueira's arguments with ones of their own. On September 10, 2009, I granted the government's motion and denied the defendants' motions to suppress their statements providing their telephone numbers. The reasons for that order are set forth below.

## BACKGROUND

The relevant facts are not in dispute. All four defendants were arrested on November 20, 2008. During their arrest processing, all were asked by Detective Vargas for personal information, including their telephone numbers. While Nogueira did not provide a telephone number, defendants Aybar, Ciman and Ricart each did. The defendants were not read their rights under *Miranda v. Arizona,* 384 U.S. 436 (1966), prior to the questions regarding their telephone numbers.

DISCUSSION

The government contends that a defendant's telephone number is pedigree information that should be admitted under the routine booking exception to *Miranda*'s exclusionary rule. I agree.

A.  *The Routine Booking Exception*

It is well-established that the police must inform an individual of his or her rights under *Miranda* prior to conducting a custodial interrogation. Generally, statements made by the defendant in response to a custodial interrogation must be suppressed unless they are preceded by a knowing, voluntary waiver of his or her *Miranda* rights. *Miranda*, 384 U.S. at 478-79. However, a plurality of the United States Supreme Court has recognized a routine booking exception to that rule, which permits certain questions to be asked "to secure the 'biographical data necessary to complete booking or pretrial services.'" *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990)(citations omitted). "In *Miranda* … 'the Supreme Court was concerned with protecting the suspect against interrogation of an investigative nature rather than the obtaining of basic identifying data required for booking and arraignment.'" *United States v. Gotchis*, 803 F.2d 74, 79 (2d Cir. 1986)(quoting *United States ex rel. Hines v. LaVallee*, 521 F. 2d 1109, 1112-13 (2d Cir. 1975), *cert. denied*, 423 U.S. 1090 (1976). Furthermore, routine booking questions also provide the information needed by the court "to determine the amount of bail to be fixed." *Id.* (quoting *Hines*, 521 F.2d at 1112).

That the routine booking exception is the law in this Circuit is abundantly clear. *See Hines*, 521 F. 2d at 1112-13 (question regarding arrestee's marital status permissible); *Gotchis,* 803 F. 2d at 78-79 (question regarding defendant's employment permissible); *United States v. Carmona*, 873 F. 2d 569, 573-74 (2d Cir. 1989)(question as to defendant's name and

reason for being in United States permissible); *Rosa v. McCray,* 396 F. 3d 210, 220-23 (2d Cir. 2005)(question as to arrestee's true hair color permissible).

Although the complete list of routine booking questions is not clear from the case law, there are certain questions that are so central to the booking and bail process that their permissibility cannot be in doubt. It must be that questions asked at the time of booking regarding an arrestee's name, aliases,[1] date of birth, address, place of employment and marital status fall within the purview of this exception. The answers to these questions impart to the magistrate judges and pretrial services officers critical information about the defendant's identity, contact information, ties to the community and, if applicable, prior criminal record -- considerations crucial in determining if the defendant should be released on bail.

Just as an address is indisputably of great significance for the bail inquiry,[2] so must be a telephone number. Indeed, now that cellular telephones have become ubiquitous, a defendant's telephone number is at least as useful and necessary as his address to a pretrial services officer who needs to contact or supervise the defendant.

In short, the questions regarding the defendants' telephone numbers amounted to routine booking questions necessarily and appropriately asked during the arrest and booking process.

---

[1] I recognize that certain questions relating to the defendant's past use of aliases may present difficulties with respect to the Fifth Amendment right against self-incrimination. As this issue is not relevant to the case at bar, I need not address it now.

[2] The defendants, through counsel for Angel Aybar, conceded at the pretrial conference that an address is a routine booking question.

4

B.   *The Intent of the Officer*

The defendants argue that, at the time he posed the question to the defendants, Detective Vargas intended to elicit an incriminating response and therefore the defendants' answers must be suppressed. I disagree.

The intent of the officer when asking the defendant for "basic identifying data" pursuant to routine booking procedures is irrelevant. As articulated by the Second Circuit in *Gotchis*, "[r]outine questions about a suspect's identity and marital status, ordinarily innocent of any investigative purpose, do not pose the dangers *Miranda* was designed to check; they are rather the sort of questions 'normally attendant to arrest and custody.'" 803 F. 2d at 79 (quoting *Rhode Island v. Innis,* 446 U .S. 291, 301 (1980)). This is sound reasoning; precisely because a question serves an important function in the bail process and is typically not asked in order to gather incriminating information, an officer must always be permitted to ask that question during routine booking -- regardless of whether the officer believes the answer may be useful to his investigation.

Moreover, judicial inquiry into the subjective intent of the officer each time a defendant seeks to suppress an answer to a routine booking question has a "defect [common to other subjective inquiries], which is that the governing test would involve matters exceedingly difficult for courts to determine after the fact." LeFave, Israel, King & Kerr, *Criminal Procedure* §6.6(c) (3d ed. 2007). The defendants contend that information properly elicited for booking purposes should be suppressed if the actual reason the officer asked the question was to strengthen the case against the arrestee. Accordingly, they seek an evidentiary hearing into Detective Vargas's motive. But, as the Second Circuit stated with regard to the analogous

5

situation of determining whether a suspect is in custody, that is, is free to leave, for the purposes of *Miranda*, it makes no sense to have such an issue

> [d]ecided by swearing contests in which officers would regularly maintain their lack of intention to assert power over a suspect save when the circumstances would make such a claim absurd, and defendants would assert with equal regularity that they considered themselves to be significantly deprived of their liberty the minute officers began to inquire of them.

*Id.* (citing *United States v. Hall,* 421 F. 2d 540, 544 (2d Cir. 1969)). Similarly, a rule that required an evidentiary hearing into an officer's subjective intent when he or she asked questions normally attendant to arrest and custody would be difficult to administer. In both contexts, the proper inquiry is therefore an objective one.

In contending otherwise, the defendants cite several cases in which statements were suppressed because the officer asked the question in order to elicit incriminating information. I suggest, respectfully, that these cases were not properly analyzed as cases implicating the routine booking exception. In *United States v. Parra,* 2 F.3d 1058 (10th Cir. 1993), the INS agent questioned the defendant regarding his name three days after his arrest, while the defendant was still in custody, and after the agent had completed research indicating that the defendant's answer as to his name upon arrest was a lie. The Tenth Circuit held that the statement should have been suppressed because the follow-up questions by the officer were not routine booking questions and, therefore, violated *Miranda. Id.* at 1067-68. Similarly, in *United States v. Minkowitz,* 889 F. Supp. 624 (E.D.N.Y. 1995), after routine booking paperwork had been completed, the arresting agents removed two credit cards from the defendant's wallet and questioned him regarding the name appearing on one of the cards, which was different from the name the defendant provided initially.[3] In my view, these cases do not implicate the routine

---

[3] The defendants also rely on *United States v. Marquez,* No. 02 Cr. 1595 at 20-22 (D.N.M. Dec. 31, 2002), in which the district court suppressed a defendant's response to an arresting officer's question regarding his

6

booking exception to *Miranda*. As both courts recognized, the questions at issue were not asked in order to obtain identifying information about the defendants upon arrest. *Parra,* 2 F.3d at 1068 (stating that the agent did not question the defendant to "obtain general booking information"); *Minkowitz,* 889 F. Supp. at 628 (stating that the questioning regarding the credit cards was certainly not "routine" or "basic"). Rather, these questions were asked to challenge the truthfulness of the defendant's answers to routine booking questions and, in the case of *Parra,* were asked well after arrest processing was complete. As a result, these cases do not fall within the ambit of the routine booking exception. Both involved custodial interrogation necessitating suppression under *Miranda*.

## CONCLUSION

In sum, the arresting officer's intent when asking routine booking questions is irrelevant to the analysis under *Muniz*. As a result, Detective Vargas's potential interest in eliciting incriminatory information from the defendants when asking for their telephone numbers does not bear on whether a question regarding a telephone number falls within the routine booking exception to *Miranda*. For that reason, the defendants' application to suppress and for an evidentiary hearing were denied.

So Ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
October 6, 2009

---

telephone number during routine booking. I disagree with that court's holding for the reasons set forth in this opinion.